IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDI LITTLE<br>10315 Mariam Lane<br>Twinsburg, Ohio 44087 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT** |
| BLUE STREAM REHAB AND NURSING,<br>LLC<br>4360 Brecksville Road<br>Richfield, Ohio 44286 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve also:**<br>National General Management Corp.<br>c/o VCorp Agent Services, Inc.<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, Ohio 43219 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| -and- | ) | |
| MENDEL BRECHER<br>c/o Blue Stream Rehab and Nursing, LLC<br>4360 Brecksville Road<br>Richfield, Ohio 44286 | )<br>)<br>)<br>) | |
| -and- | ) | |
| DAWN NELSON<br>c/o Blue Stream Rehab and Nursing, LLC<br>4360 Brecksville Road<br>Richfield, Ohio 44286 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Brandi Little, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Little is a resident of the city of Twinsburg, county of Summit, state of Ohio.

2. Blue Stream Rehab and Nursing, LLC ("Blue Stream") is a domestic limited liability company that operated a business located at 4360 Brecksville Road, Richfield, Ohio 44286.

3. Blue Stream was at all times hereinafter mentioned an employer within the meaning of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq*.

4. Blue Stream was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

5. Blue Stream was at all times hereinafter mentioned an employer within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

6. Upon information and belief, Defendant Mendel Brecher is a resident of the state of Ohio.

7. Brecher made and/or participated in the adverse actions asserted herein.

8. Upon information and belief, Defendant Dawn Nelson is a resident of the state of Ohio.

9. Nelson made and/or participated in the adverse actions asserted herein.

## JURISDICTION & VENUE

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Little is alleging a Federal Law Claim under 42 U.S.C. § 2000e *et seq*. and 29 U.S.C. § 2601 *et seq*.

11. All of the material events alleged in this Complaint occurred in Summit County.

12. Within 300 days of the conduct alleged below, Little dual-filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), against Defendants.

13. On or about July 27, 2023, the OCRC issued and mailed Notice of Right to Sue letters to Little regarding the Charges of Discrimination.

14. On or about September 6, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Little regarding the Charges of Discrimination.

15. Little received her Right to Sue letters from the EEOC – which has been attached hereto as Plaintiff's Exhibit A.

16. Little received her Right to Sue letter from the OCRC – which has been attached hereto as Plaintiff's Exhibit B.

17. Little has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter from the EEOC.

18. Little has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

19. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and (4).

20. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

21. Little is African American.

22. On or around September 30, 2021, Blue Stream sent Little a written employment letter ("Offer Letter").

23. The Offer Letter included a provision that there was an eighteen-month contractual obligation ("Contract Term").

24. The Offer Letter included a provision that Little would work in a full-time position with Blue Stream.

25. The Offer Letter included a provision that Little would receive a salary of $80,000 per year.

26. The Offer Letter included a provision that Little would be eligible for health benefits after 90 days of full-time employment.

27. Little accepted the terms of the Offer Letter, creating a contract ("Employment Contract").

28. Little is a former employee of Blue Stream.

29. Little began working for Blue Stream on or around October 25, 2021.

30. Blue Stream employed Little as an Admission and Marketing Director.

31. During her employment, Little was one of the only African American management employees.

32. During her employment, Little became aware of multiple instances of racial disparate treatment against African American employees.

33. Caucasian employees have called African American employees and residents comments, such as "black bitch" and "homie."

34. African American employees and residents have been called stupid and have been treated as less intelligent and competent than Caucasian employees and residents.

35. Little opposed the racial disparate treatment with Defendants.

36. Little's son suffers from cancer.

37. Cancer is considered a serious medical condition.

38. Blue Stream is subject to the provisions of the FMLA.

39. As of October 25, 2022, Little qualified for protected leave under the FMLA.

40. As of October 25, 2022, Little worked for Blue Stream for at least 12 months.

41. As of October 25, 2022, Little had at least 1,250 hours of service for Blue Stream during the previous 12 months.

42. As of October 25, 2022, Little was entitled to utilize FMLA leave to care for her son who suffers from cancer.

43. Little's son was hospitalized due to a cancer-related infection that needed intensive medical care.

44. Little informed Defendants of her son's hospitalization.

45. Defendants failed to provide Little with notice of her rights under the FMLA.

46. Nelson harassed Little multiple times while Little was on leave to take care of her son.

47. Blue Stream employed Nelson as a Rehab Administrator.

48. During all material events asserted herein, Nelson has and/or had authority to hire, fire, and/or discipline employees.

49. Nelson did not participate in the decision to hire Little.

50. Nelson is not African American.

51. Nelson harassed Little multiple times while Little was on leave to take care of her son to try to induce Little to return to work sooner.

52. Protected leave under the FMLA would have protected Little from Nelson's harassment.

53. Caucasian employees at Blue Stream were permitted to take medical leave without interference.

54. Nelson harassed Little multiple times while Little was on leave to take care of her son because of her race.

55. During her employment, Brecher asked Little to change patient insurance information without patient knowledge or consent.

56. Brecher is Blue Stream's owner.

57. During all material events asserted herein, Brecher has and/or had authority to hire, fire, and/or discipline employees.

58. The Federal and State governments, through government health programs including Medicaid, are among the principal payors for medical services rendered by medical providers affiliated with Defendant.

59. Medicaid is a public assistance program that provides payment of medical expenses for low-income patients.

60. Funding for Medicaid is shared between the federal government and those state governments choosing to participate in the program, including Ohio.

61. Medicaid is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency which sets standards and regulations for participation in the programs. The Ohio Department of Medicaid administers Ohio's Medicaid program.

62. The Medicaid programs work by reimbursing health care providers for the cost of services and ancillary items. The Medicaid administrators rely on direct and implied representations by providers, reimbursable in whole or in part, that the services billed by the providers meet certain regulatory requirements.

63. Under 42 CFR § 440.230, state agencies, like the Ohio Department of Medicaid, may place appropriate limits on services reimbursable through Medicaid.

64. Under R.C. § 5163.02, the Ohio Department of Medicaid, through its director, has the authority to promulgate rules to establish eligibility requirements for the Medicaid program.

65. Chapter 5160 of the Ohio Administrative Code ("OAC") sets forth the eligibility requirements for participation in Medicaid.

66. Under OAC 5160-1-02, a medical service is reimbursable if, among other things, (1) "[t]he service is determined medically necessary as defined in rule 5160-1-01 of the Administrative Code. . . [and] is provided within the scope of practice of the rendering provider as defined by applicable federal, state, and local laws and regulations."

67. A service is "medically necessary" under OAC 5160-1-01 if it meets generally

accepted standards of medical practice; is clinically appropriate in its type, frequency, extent, duration, and delivery setting; is appropriate to the adverse health condition for which it is provided and is expected to produce the desired outcome; is the lowest cost alternative that effectively addresses and treats the medical problem; provides unique, essential, and appropriate information if it is used for diagnostic purposes; and is not provided primarily for the economic benefit of the provider nor for the sole convenience of the provider or anyone else other than the recipient.

68. OAC Chapter 5160-27 governs the reimbursement to providers of behavioral health services, such as those provided by Defendants, under Medicaid, and likewise conditions reimbursement on medical necessity and that the provider acted within the scope of practice.

69. Little complained to Brecher that changing patient insurance information without patient knowledge or consent was illegal.

70. Little reasonably believed that changing patient insurance information without patient knowledge or consent was illegal.

71. Under R.C. § 2913.40, defrauding Ohio's Medicaid program is illegal, with possible discipline resulting in a felony.

72. Subsequent to her complaints about insurance fraud, Defendants retaliated against Little.

73. Subsequent to her complaints about insurance fraud, Defendants issued false and pretextual disciplinary actions to Little.

74. On or around January 26, 2023, Defendants terminated Little's employment.

75. Defendants terminated Little's employment because of her race.

76. Defendants terminated Little's employment in retaliation for opposing race discrimination.

77. Defendants terminated Little's employment in retaliation for reporting insurance fraud.

78. When Defendants terminated Little's employment on January 26, 2023, they breached the Employment Contract.

## COUNT I: BREACH OF CONTRACT

79. Little restates each and every prior paragraph of this complaint, as if it were fully restated herein.

80. On or around October 25, 2021, Little and Blue Stream entered into the Employment Contract.

81. In accordance with the Employment Contract, the Contract Term was for 18 months of employment with Blue Stream.

82. Little began working for Blue Stream on or around October 25, 2021.

83. On or around January 26, 2023, Defendants terminated Little's employment.

84. Defendants terminated Little's employment prior to the end of the Contract Term.

85. In terminating Little's employment prior to the Contract Term, Blue Stream breached the Employment Contract.

86. As a direct and proximate result of Blue Stream's conduct, Little has suffered and will continue to suffer damages.

## COUNT II: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

87. Little restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

88. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

89. Blue Stream is subject to the provisions of the FMLA.

90. As of October 25, 2022, Little qualified for protected leave under the FMLA.

91. As of October 25, 2022, Little worked for Blue Stream for at least 12 months.

92. As of October 25, 2022, Little had at least 1,250 hours of service for Blue Stream during the previous 12 months.

93. As of October 25, 2022, Little was entitled to utilize FMLA leave to care for her son who suffers from cancer.

94. Little's son was hospitalized due to a cancer-related infection that needed intensive medical care.

95. Little informed Defendants of her son's hospitalization.

96. Defendants failed to properly advise Little of her rights under the FMLA.

97. Defendants unlawfully interfered with Little's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

98. As a direct and proximate result of Defendants' conduct, Little is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq.*

99. Little restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. Little is African American

101. Throughout her employment, Little was fully competent to perform her essential job duties.

102. Defendants treated Little differently than other similarly situated employees based on her race.

103. Defendants violated 42 U.S.C. § 2000e *et seq.* by discriminating against Little due to her race.

104. On or about January 26, 2023, Defendants terminated Little without just cause.

105. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

106. Defendants terminated Little based on her race.

107. Defendants violated 42 U.S.C. § 2000e *et seq.* when they terminated Little based on her race.

108. Little suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e *et seq.*

109. As a direct and proximate result of Defendants' conduct, Little has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

110. Little restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111. Little is African American.

112. Throughout her employment, Little was fully competent to perform her essential job duties.

113. Defendants treated Little differently than other similarly situated employees based on her race.

114. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Little due to her race.

115. On or about January 26, 2023, Defendants terminated Little without just cause.

116. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

117. Defendants terminated Little based on her race.

118. Defendants violated R.C. § 4112.01 *et seq.* when they terminated Little based on her race.

119. Little suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

120. As a direct and proximate result of Defendants' conduct, Little has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq.*

121. Little restates each and every prior paragraph of this complaint, as if it were fully restated herein.

122. As a result of the conduct described above, Little complained about the race discrimination she was experiencing.

123. Making complaints about race discrimination is a protected activity.

124. Defendants were aware of Little's discrimination complaints.

125. Subsequent to opposing race discrimination, Little received unjustified write ups or corrective actions.

126. Subsequent to opposing race discrimination, Defendants terminated Little's employment.

127. Defendants' actions were retaliatory in nature based on Little's opposition to the unlawful discriminatory conduct.

128. Little suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e *et seq*.

129. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Little, she suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

130. Little restates each and every prior paragraph of this complaint, as if it were fully restated herein.

131. As a result of the conduct described above, Little complained about the race discrimination she was experiencing.

132. Making complaints about race discrimination is a protected activity.

133. Defendants were aware of Little's discrimination complaints.

134. Subsequent to opposing race discrimination, Little received unjustified write ups or corrective actions.

135. Subsequent to opposing race discrimination, Defendants terminated Little's employment.

136. Defendants' actions were retaliatory in nature based on Little's opposition to the unlawful discriminatory conduct.

137. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

138. Little suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

139. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Little, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT VII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

140. Little restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

141. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because she engages in protected activity under Ohio law.

142. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

143. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against insurance fraud.

144. Under R.C. § 2913.40, Ohio has a clear public policy against defrauding its Medicaid programs, which reflects that defrauding Ohio's Medicaid program is illegal, with possible discipline resulting in a felony.

145. During her employment, Little complained to Defendants about insurance fraud.

146. Susbsequent to her complaints, on or around January 26, 2023, Defendants terminated Little's employment.

147. Defendants' termination of Little jeopardizes these public policies.

148. Defendants' termination of Little was motivated by conduct related to these public policies.

149. Defendants had no overriding business justification for terminating Little.

150. As a direct and proximate result of Defendants' conduct, Little has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT VIII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION IN VIOLATION OF R.C. § 4112.02(J)

151. Little restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

153. Nelson and Brecher aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory treatment of Little.

154. Nelson and Brecher aided, abetted, incited, coerced, and/or compelled Defendants' discriminatory termination of Little.

155. Nelson and Brecher violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

156. Little suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

157. As a direct and proximate result of Defendants' conduct, Little has suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Little demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Little to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Little for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Little's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Taurean J. Shattuck*
Taurean J. Shattuck (0097364)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  Taurean.Shattuck@spitzlawfirm.com

*Attorney For Plaintiff*

## **JURY DEMAND**

Plaintiff Brandi Little demands a trial by jury by the maximum number of jurors permitted.

                                                  */s/ Taurean J. Shattuck*
                                                  Taurean J. Shattuck (0097364)
                                                  **SPITZ, THE EMPLOYEE'S LAW FIRM**